United States District Court
District of Massachusetts

| | |
|---|---|
| **CHICOPEE SAVINGS BANK**<br>**COUNTRY BANK FOR SAVINGS**<br>**EASTHAMPTON SAVINGS BANK**<br>**HAMPDEN BANK MONSON SAVINGS**<br>**BANK and UNITED BANK,**<br>      PLAINTIFFS,<br>      v.<br><br>**CITY OF SPRINGFIELD,**<br>      DEFENDANT. | **CIVIL ACTION NO.**<br>11-30280-MAP |

## DEFENDANT CITY OF SPRINGFIELD'S SUR-REPLY

Now comes the Defendant City of Springfield in the above-captioned case and provides this sur-reply to the Plaintiffs' Response to the Defendant's Reply and Opposition to the Plaintiffs' Motion for Entry of Judgment and the Defendant's cross motion to Dismiss or in the alternative for Summary Judgment. The Defendant hereby incorporates the legal arguments set forth in its Reply and Opposition to the Plaintiffs' Motion for Entry of Judgment and the Defendant's cross motion to Dismiss or in the alternative for Summary Judgment.

### I.  Introduction

The Plaintiffs' response re-alleges that the City's Foreclosure and Mediation Ordinances violate federal constitutional rights and are preempted by existing state law; however, no new legal analysis is offered in support of those claims, and the Plaintiffs have yet to provide any affidavits or evidence establishing that the necessary legal standards have been satisfied and the burden of proof has been met. The Plaintiffs instead have elected to restate the same arguments contained in their Motion for Entry of Judgment, and have misstated both the Defendant's

1

arguments and the legal standard of analysis applicable in the instant case. The Defendant's sur-reply addresses the statements made in the Plaintiffs' response in the same order in which they appear.

## II.     General Response

The Plaintiffs' response states that dismissal of this action is not appropriate, as both parties seek guidance from the Court. (Response of the Plaintiffs to the Defendant's Reply and Opposition to Plaintiff's Motion for Entry of Judgment and Opposition to Defendant's Cross Motion to Dismiss for Summary Judgment, Pg. 1-2). While both parties would benefit from the Court rendering a decision on the validity of the Ordinances in question, the discretion as to whether to decide this case is a preliminary question for this court to decide. Based on an analysis of the entirety of the facts in this matter as applied to the articulated standard for maintaining an action for declaratory judgment, the Court has the authority to dismiss this action if it does not consider the issue to be ripe, and is not bound to reject the Defendant's cross motion simply because the Parties would potentially benefit from a decision on the question of validity.

## III.    Alleged Contract Clause Violation

The Plaintiffs' response states that Defendant's reliance in part on *Parella v. Ret. Bd. Of R.I. Emps' Ret. Sys*. 173 F.3d 46 (1st Cir 1999) and *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400 (1983) is misplaced as those cases involved "public contracts" and the instant case is limited to a mortgage agreement between private parties. (Response of the Plaintiffs to the Defendant's Reply and Opposition to Plaintiff's Motion for Entry of Judgment and Opposition to Defendant's Cross Motion to Dismiss for Summary Judgment, Pg. 2).

Plaintiffs' distinction in the context of alleged Contract Clause violations between contracts that involve a public entity and those between private entities is without any support and contrary to applicable holdings. In *Parella*, the First Circuit expressly stated, "The same two-part test applies in both public and private contexts." *Parella*, 173 F.3d at 59; See *Parker v. Wakelin,* 123 F.3d 1, 4-5 (1st Cir. 1997); *McGrath v. Rhode Island Retirement Bd.,* 88 F.3d 12, 16 (1st Cir. 1996).

Both public and private Contract Clause claims are analyzed under a two-pronged test. *Parella*, 173 F.3d at 59. The first question "is 'whether the state law has . . . operated as a substantial impairment of a contractual relationship.'" *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411 (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978)). If the contract was substantially impaired, the court next turns to the second question and asks whether the impairment was "reasonable and necessary to serve an important government purpose." *Parella*, 173 F.3d at 59.

The only distinction between public and private contracts analysis is the height of the hurdles plaintiffs must overcome under each part of this test. *Parella*, 173 F.3d at 59. "Where the state is alleged to have impaired private contractual rights, the hurdle for plaintiffs under the second part of the test will ordinarily be higher than in public contract cases, since states have broad discretion to determine whether an impairment of a private contract is reasonable or necessary." *Id*. at 59. Therefore, Plaintiffs have a higher standard of proof in the instant case as it involves a contract between private parties than it would if a public entity was involved. When the state allegedly impairs a public contract, "less deference to a legislative determination of reasonableness and necessity is required, because the State's self-interest is at stake." *Id*. at 59

(internal quotation marks and citation omitted).  Plaintiffs have failed to satisfy the two-pronged analysis.

The Plaintiffs' response claims that, "The actual impact of the Foreclosure Ordinance in particular on the existing contracts…is not the eventual ability to foreclose, rather it is the shifting of the responsibilities for repair and maintenance of the real estate from the mortgagor to the mortgagee which results in a substantial impairment to existing mortgage contracts." (Response of the Plaintiffs to the Defendant's Reply and Opposition to Plaintiff's Motion for Entry of Judgment and Opposition to Defendant's Cross Motion to Dismiss for Summary Judgment, Pg. 2).

The Ordinances do not shift any responsibilities in terms of repairing or rehabilitating properties that do not exist currently, but rather call for maintenance that is in furtherance of the preservation of properties already established by state law and the terms of the mortgage agreement.

Such maintenance obligations already exist for mortgagees in Massachusetts. For example, the State Sanitary Code imposes a duty upon entities exercising control over properties which could be a property manager, owner, or mortgagee, depending on the facts. If a mortgagee is collecting rents, changing locks, seeking to evict, or carrying out other activities indicating satisfaction of the State Sanitary Code obligations, the City currently and under the Ordinances, seeks to impose obligations to maintain and repair. 105 CMR 410.020.[1]

However, each case is going to require a case-by-case determination. Where the indicia is insufficient to satisfy the State Sanitary Code, the City would not be able to impose additional

---

[1] "Owner means every person who alone or severally with others, . . . (2) has care, charge, or control of any dwelling . . . vacant or otherwise . . . in any capacity, including but not limited to agent, executor, executrix, administrator, administratrix, trustee or guardian or the estate of the holder of legal title . . . .(3) mortgagee in possession of any such property. . .."

4

duties. It will likely involve the discretion of the Building Commissioner and/or Fire Commissioner as to the factual basis for imposing such duties. What the Ordinance provides is a regulatory database, funding for operations, and an alternative dispute resolution process.

As observed by the *Negron* court, "[e]ven where the mortgagee possesses a statutory right of sale, the right to rehabilitate the property inures to the mortgagor until a sale complying with the statutory requirements is effectuated…the mortgagee does not have the right to choose between sale, rehabilitation, or other disposition of the property." *Negron v. Gordon*, 373 Mass. 199, 206 (1977). Until a proper sale takes place, mortgagors, not mortgagees, are responsible for repairing or rehabilitating the property. The Ordinances do not change this in any way, as they merely call for maintenance of the property so as to prevent it from falling into greater disrepair.

The Ordinances' requirement of maintaining the property, as opposed to the greater responsibility of repairing or rehabilitating the property, does not rise to the level of significant impairment of the contract, thus the Plaintiffs do not meet the standard for a substantial impairment.

No evidence has been presented by the Plaintiffs showing that the Ordinances cause a <u>severe</u> disruption of contractual obligations. In their response, Plaintiffs assert they applied each of the *JSS Realty Co., LLC v. Town of Kittery, Maine* (177 F. Supp. 2d 64) factors of the substantial impairment analysis and that all have been satisfied. The Plaintiffs' response lists the factors and how they allegedly applied them to the instant matter, "(i) whether the statute applied to an existing contract; the Ordinances provide that they are applicable to mortgages in existence on December 13, 2011; (ii) whether it appeared to be targeted towards a particular party; the Ordinances appear to target mortgage lenders; (iii) whether a basic term of the contract was substantially modified retroactively; the Ordinances shift responsibility for repair and

maintenance from the mortgagor/homeowner to the mortgagee/lender; and (iv) whether the legislation caused a severe disruption of contractual obligations; the Ordinances require the lender to assume obligations which were not part of the original bargain and which redefine the mortgagor/mortgagee relationship." (Response of the Plaintiffs to the Defendant's Reply and Opposition to Plaintiff's Motion for Entry of Judgment and Opposition to Defendant's Cross Motion to Dismiss for Summary Judgment, Pg. 3).

Taking the full breadth of the *JSS Realty* analysis into account, and properly applying it to the facts before the Court in the instant case, the Plaintiffs have not provided any factual or legal basis that can satisfy three of the four factors set forth in the standard for evaluating whether a substantial impairment is present. The Ordinances do not single out any one holder of a mortgage and are not targeted at any particular party; do not substantially modify any basic term of the contract retroactively; and do not cause a severe disruption of contractual obligations.

Unlike in *JSS Realty,* where the local law was targeted to a single, specific development project, the Ordinances in question here apply equally to all residential mortgage agreements. Additionally, the basic terms of mortgage contracts in existence at the time of the enactment of the Ordinances are not altered by Springfield's local law, as the term of the loan, payment schedule, and remedies for breach of the agreement all remain fully intact and unchanged. The Plaintiffs claim that the Ordinances shift the responsibilities for repairing the property from mortgagors to mortgagees, but the only requirement of mortgagees under the Ordinances is to maintain the property in order to preserve the asset; the mortgagee is not required to repair or rehabilitate the property.

Further, no affidavits or other evidence are contained in the pleadings to show that the Ordinances cause a <u>severe</u> disruption of contractual obligations. Maintenance of the property was

already an existing right before the Ordinances as most (if not all) mortgage agreements include such a clause or provision for such action under certain circumstances in order to preserve the property. Where indicia is present to show the mortgagor has exercised rights, in conformance with current law and practice, the City intends to follow through with such Code Enforcement efforts.

For example, where the City's Code Enforcement division has brought an enforcement action under the State Sanitary Code for a property that is currently in foreclosure, mortgagees routinely intervene and take control of securing and maintaining the property to prevent the appointment of a receiver under M.G.L. c. 111 section 127I. Mortgagees in such a scenario have the right to enter upon the property to maintain and preserve the underlying asset of the mortgage note, and the provisions of the Foreclosure Ordinances would certainly be applied in such a case.

Additionally, the Plaintiffs' response states, "The Foreclosure Ordinance was not, by its terms, promulgated to address the issue of unnecessary foreclosures." (Response of the Plaintiffs to the Defendant's Reply and Opposition to Plaintiff's Motion for Entry of Judgment and Opposition to Defendant's Cross Motion to Dismiss for Summary Judgment, Pg. 3).

The Foreclosure Ordinances were motivated by the City's urgent need to combat the ongoing foreclosure crisis, in the absence of any effective state or federal action. In doing so, the City aimed, among other things, to decrease the number of unnecessary foreclosures through the Ordinances' mediation and registration programs. Even assuming, *arguendo,* that the requisite impairment exists, the Plaintiffs' response fails to even address where such an impairment would be unreasonable or unnecessary, or that there are any other available alternatives with lesser impact on the rights affected.

**IV.     Preemption by Massachusetts Law**

The Plaintiffs' response incorrectly states that Defendant "concedes" that provisions of the Foreclosure Ordinance conflict with Massachusetts General Laws Ch. 21E, and misstates what is required under the Ordinances by claiming that the Defendant concedes that removal of hazardous material "is mandated by the Foreclosure Ordinance." (Response of the Plaintiffs to the Defendant's Reply and Opposition to Plaintiff's Motion for Entry of Judgment and Opposition to Defendant's Cross Motion to Dismiss for Summary Judgment, Pg. 4).

The Ordinance states that owners shall "Remove from the property, to the satisfaction of the Fire Commissioner, hazardous material as that term is defined in Massachusetts General Laws, Chapter 21K, as that statute may be amended from time to time." (Springfield City Ordinance Title 7, Chapter 7.50.030(3)). This language provides the Fire Commissioner with discretion when acting in furtherance of the Ordinance, and in no way "mandates" removal of any hazardous substances in violation of the "safe harbor" clause of M.G.L. c. 21E as the Plaintiffs claim.

As the Defendant has maintained from the outset, the Ordinances acknowledge that different circumstances exist as to each property, and as such, the requirements for compliance with the Ordinances largely rest on case-by-case determinations from the Building and Fire Commissioners. The Ordinances include a clause specifically for circumstances where actions may be exempted by Massachusetts General Laws. The Plaintiffs allege that the inclusion of the clause "unless exempt from such actions by Massachusetts General Laws" within the subject Ordinances somehow shows a sharp conflict with existing state laws by contending that owners under the subject Ordinances are somehow now faced with an "onerous and unrealistic burden"

to be familiar with state law because the City has included a clause within the Ordinances that provides guidance where any potential conflicts may arise.

It appears from this line of reasoning that the Plaintiffs are arguing that they have no responsibility to know the law, and that the City of Springfield has an obligation to provide the Plaintiffs with an education on Massachusetts General Laws. Such an argument must fail, as the Court has been clear in stating that all people under the law, including corporations who make a profit by loaning money through mortgage agreements, have an ongoing obligation to be familiar with the laws that govern the jurisdiction and the arena of business in which they have elected to operate. See *Wilber Nat. Bank of Oneonta, N.Y. v. U.S.*, 294 U.S. 120, 124 (1935) (Court assumed that statutes and regulations governing War Risk Insurance Bureau are known by those who deal with it); see also *Anderson Nat. Bank v. Luckett*, 321 U.S. 233, 243 (1944) (All persons having property located within a state and subject to its dominion must take notice of its statutes affecting control or disposition of such property and of the procedure which they set up for those purposes).

The Plaintiffs' preemption argument wholly ignores the distinction that the Ordinances, far from exhibiting the necessary ***sharp*** conflict required under a preemption examination, are in fact, cooperative, consistent with, and work in conjunction with existing state laws. The Plaintiffs fail to establish that the purposes of the State Sanitary Code, the Massachusetts Foreclosure Statute and/or the Massachusetts Oil and Hazardous Waste Material Release Prevention Act are ultimately frustrated by operation of the Ordinances, and do not provide any evidence of conflicts outside of the realm of hypothetical scenarios.

Lastly, the Plaintiffs claim that the Ordinances in question contain a "legal defect" that places the Plaintiffs in an "untenable position…in determining whether and how to comply with

certain provisions of the Foreclosure Ordinance." (Response of the Plaintiffs to the Defendant's Reply and Opposition to Plaintiff's Motion for Entry of Judgment and Opposition to Defendant's Cross Motion to Dismiss for Summary Judgment, Pg. 5-6).

This assertion does not address the fact that regulations for implementation of the subject Ordinances have yet to be issued, and that the determination of "whether and how" to comply with certain provisions of the Ordinances will be set forth in both the regulations and the orders of the Building and Fire Commissioners. Regardless of implementation, Plaintiffs are attempting to invent a conflict or create confusion and uncertainty where none exists. The Plaintiffs allege that they are in an untenable situation in trying to determine how and whether to comply with the Foreclosure Ordinances; however, the plain language of Chapter 7.50.030, which sets forth owners' requirements under the maintenance and registration portion of the Foreclosure Ordinances, contains provisions that it is the Building and Fire Commissioners who must make determinations about the applicability of the Ordinances to a property, not property owners. When a property becomes eligible for registration under the Ordinances, compliance with the Ordinances is simply a matter of following the Regulations (which will be forthcoming when implementation begins and will be available to all members of the public) and the orders of the Building and Fire Commissioners respectively (which are made on a case-by-case basis). As such, to suggest that the Plaintiffs have the obligation to make determinations about how and whether to comply with the Ordinances is simply incorrect.

V.     **Unlawful Tax**

The Plaintiffs' response reasserts that the fee and Bond requirement from Ordinance Chapter 7.50, constitutes an illegal tax, submitting the identical argument contained within its Memorandum in Support of its Motion for Entry of Judgment that "the required charges in

general and the cash bond in particular fail to satisfy…" the standard of analysis for determining a valid municipal fee. (Response of the Plaintiffs to the Defendant's Reply and Opposition to Plaintiff's Motion for Entry of Judgment and Opposition to Defendant's Cross Motion to Dismiss for Summary Judgment, Pg. 6)

The standard for evaluation of whether a local regulatory fee amounts to an Unlawful tax is set forth in both *Emerson College v. City of Boston (*391 Mass. 415, 425 (1984)), quoting *National Cable Television Ass'n v. United States* (415 U.S. 336, 341 (1974)), and *Silva v. City of Attleboro* (454 Mass. 165 (2009)), and can be summarized as a three factor test: whether the fee "(1) applies to the direct beneficiary of a particular service, (2) is allocated directly to defray the costs of providing the service, and (3) is reasonably proportionate to the benefit received." *Silva v. City of Attleboro,* 454 Mass.at 172 (2009). The Defendant reasserts the arguments made on pages 30-33 of the Defendant's Memorandum of Law in Reply and Opposition to the Plaintiffs' Motion for Judgment on the Pleadings and in Support of Defendant's Cross Motion to Dismiss, or in the Alternative, for Summary Judgment.

The Plaintiffs claim that the prong as to a particularized service has not been met, and contend that if the registration database is available to the general public, there is no particularized benefit to satisfy *Emerson*.  (Response of the Plaintiffs to the Defendant's Reply and Opposition to Plaintiff's Motion for Entry of Judgment and Opposition to Defendant's Cross Motion to Dismiss for Summary Judgment, Pg. 6). Because the City maintains a database of information for registered properties, which includes the fee payer's contact information and phone numbers for persons on the ground who are in charge of the property, a fee payer receives the benefit of a direct line of communication with the City's Code Enforcement Department where problems are found to exist at a property. (Defendant's Reply and Opposition to Plaintiff's

Motion for Entry of Judgment and Opposition to Defendant's Cross Motion to Dismiss for Summary Judgment, Pg. 32).

Where the City has been made aware of an issue at a registered property, the registration information is used to inform ***the registered party*** of the problems on site, and provides an opportunity for the party to address any issues right away, without the need for a Code Enforcement action to commence. Such a benefit has positive financial impacts both on the value of the subject property and relative to the use of both parties' time and personnel resources. This direct benefit is not received by members of the general public, or non-fee-payers.

The Plaintiffs' response erroneously asserts that "the Defendant has required the registration of certain properties since 2009 at no charge". Plaintiffs reference an Exhibit A; a registration form used by the City for registrations under the prior Foreclosure Ordinance (Response of the Plaintiffs to the Defendant's Reply and Opposition to Plaintiff's Motion for Entry of Judgment and Opposition to Defendant's Cross Motion to Dismiss for Summary Judgment, Pg. 6). Under the prior Ordinance, a registration fee of $100.00 was charged as specifically stated on the Exhibit A submitted.

Lastly, the Plaintiffs contend that the payment of the Bond requirement amounts to an unlawful tax, as it is "clearly not reasonably proportionate to any service received by secured lenders…" (Response of the Plaintiffs to the Defendant's Reply and Opposition to Plaintiff's Motion for Entry of Judgment and Opposition to Defendant's Cross Motion to Dismiss for Summary Judgment, Pg. 7). This conclusion fails to account for the very nature of a Surety Bond payment, where the funds are deposited, held, and eventually released to the original party holding the monies. Thus, the Bond requirement should not be analyzed under Plaintiffs' unlawful tax claims, as it is not a fee.

## VI. **Conclusion**

For the above reasons, and the reasons included in the Defendant's Reply and Opposition to Plaintiffs' Motion for Entry of Judgment and Opposition to Defendant's Cross Motion to Dismiss for Summary Judgment, the Defendant respectfully requests that this Court deny the Plaintiffs' Motion for Judgment on the Pleadings, and enter Judgment for the Defendant on its Cross Motion for Judgment.

Respectfully submitted.
By:
   /s/ Edward M. Pikula
Edward M. Pikula, BBO#399770
City Solicitor

    /s/ Lisa C. deSousa
Lisa C. deSousa, BBO # 546115
Associate City Solicitor

    /s/ Thomas D. Moore
Thomas D. Moore, BBO# 669709
Associate City Solicitor
CITY OF SPRINGFIELD LAW DEPARTMENT
95 State Street, 6th floor
Springfield, Massachusetts 01103
Telephone: (413) 886-5206
Telefax:     (413) 787-6515

---

**CERTIFICATE OF SERVICE**
The undersigned hereby certifies that a true copy of the within Sur-reply was this day filed electronically to: Attorney Tani Sapirstein, 1350 Main Street, 12th floor, Springfield, Massachusetts 01103. SIGNED under the pains and penalties of perjury.

Dated:  June 20, 2012

    /s/ Thomas D. Moore
Thomas D. Moore, Esquire