UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

EASTHAMPTON SAVINGS BANK,        )
ET AL.,                          )
                Plaintiffs       )
                                 )
        v.                       ) C.A. NO. 11-cv-30280-MAP
                                 )
CITY OF SPRINGFIELD,             )
                Defendant        )


MEMORANDUM AND ORDER REGARDING
PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW AND
DEFENDANT'S CROSS MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
(Dkt. Nos. 18 & 20)

July 3, 2012

PONSOR, U.S.D.J.

I. INTRODUCTION

This action challenges two municipal ordinances that

Defendant the City of Springfield passed in 2011.  One

ordinance requires the maintenance of residential properties

that are vacant or in the process of foreclosure; the second

mandates a mediation program for foreclosures of owner-

occupied residential properties.  Plaintiffs, a group of

banks who own mortgages in the City of Springfield, seek a

declaratory judgment and equitable relief against the City,

arguing that the ordinances are invalid under the U.S.

Constitution and state law.  They have filed a motion for
judgment as a matter of law, asking the court to declare the
ordinances invalid.  (Dkt. No. 18.)  Defendant opposes
Plaintiffs' motion and has filed a cross-motion to dismiss
or, in the alternative, for summary judgment.  (Dkt. No.
20.)  For the reasons stated below, the court will deny
Plaintiffs' motion and allow Defendant's motion.

## II. BACKGROUND

In 2011, the City of Springfield enacted two municipal
ordinances relating to mortgage foreclosures: Chapter 7.50,
entitled "Regulating the Maintenance of Vacant and/or
Foreclosing Residential Properties and Foreclosures of Owner
Occupied Residential Properties" ("Foreclosure Ordinance"),
and Chapter 7.60, entitled "Facilitating Mediation of
Mortgage Foreclosures of Owner Occupied Residential
Properties" ("Mediation Ordinance").

The Foreclosure Ordinance regulates the maintenance of
vacant properties and properties that are in the process of
foreclosure.  It requires owners of such properties to
fulfill certain maintenance requirements, including
maintaining the property in accordance with all relevant

2

state and local laws, removing hazardous material from the property, posting no-trespassing signs, securing all windows and doors, ensuring that the property is free from overflow trash, debris, and pools of stagnant water, and maintaining liability insurance on the property.  It also requires owners to provide contact information and other documentation regarding the property for inclusion in a regulatory database.  Finally, the owner must provide the Springfield Building Commissioner with a cash bond of no less than $10,000 to ensure continued compliance with the ordinance and to reimburse the city for any expenses it incurs in maintaining the property.  The City will retain a portion of each bond as an administrative fee to fund an account for expenses the City incurs in inspecting and maintaining properties that are not in compliance with the ordinance.  The ordinance does not specify how much of the bond the City will retain, but counsel for the City represented during a hearing on the motions that the amount was likely to be between $200 and $500.  The Foreclosure Ordinance defines "owner" broadly and includes in the definition all mortgagees who have initiated the foreclosure

3

process.

The Mediation Ordinance requires any mortgagee who attempts to foreclose on an owner-occupied residential property to participate in a city-approved mediation program.  Both parties must make a good faith effort during mediation to "negotiate and agree upon a commercially reasonable alternative to foreclosure . . . ."  (Dkt. No. 4, Ex. 2, Meditation Ordinance, Chapter 7.60.020(B).)  If the mediator determines that the parties are unable to reach an agreement, the mediator will issue a certificate confirming the parties' good faith participation in the program and the mortgagee may proceed with foreclosure.

The ordinances went into effect on December 13, 2011 and apply to all mortgages that existed as of that date. All of the Plaintiffs had existing residential mortgages in the City as of December 13, 2011.  Failure to comply with either ordinance may result in civil penalties and, in the case of the Foreclosure Ordinance, criminal penalties. However, the City has not yet developed any enforcement mechanism and has stayed enforcement pending the adoption of implementation procedures and the court's decision on

Plaintiffs' challenge.

Plaintiffs brought this action in state court on December 8, 2011, and Defendant removed it to this court. On April 4, 2012, Plaintiffs filed a motion for a preliminary injunction.  The court denied Plaintiffs' motion without prejudice on the basis of the City's representation that the ordinances would not be implemented until this litigation was resolved.  Before the court now are the parties' cross motions for judgment.

### III. <u>DISCUSSION</u>

Although Plaintiffs allege that both ordinances are invalid under state and federal law, the primary focus of their arguments is on the Foreclosure Ordinance only. Plaintiffs argue that: (1) both ordinances are preempted by Massachusetts state law; (2) the Foreclosure Ordinance violates the Contracts Clause of the U.S. Constitution; and (3) the provision in the Foreclosure Ordinance that requires a cash bond constitutes an unlawful tax in violation of state law.  Plaintiffs include a number of other constitutional claims in the Complaint but have not

developed them in the motion currently before the court.[1]

A. Preemption.

Under the Massachusetts Home Rule Procedures Act, a municipality may adopt local ordinances as long as they are "not inconsistent with the constitution or laws enacted by the general court in conformity with powers reserved to the general court . . . ." Mass. Gen. Laws ch. 43B, § 13. In determining whether a local ordinance is inconsistent with state law, Massachusetts courts give "considerable latitude" to the municipality and will only invalidate the law if there is a "sharp conflict" between the ordinance and a state statute. Bloom v. City of Worcester, 363 Mass. 136, 154 (1973). A "sharp conflict" exists "when either the legislative intent to preclude local action is clear, or,

---

[1] In its opposition to Plaintiffs' motion for judgment as a matter of law, Defendant raised a question regarding ripeness, noting that the ordinances have not yet been implemented or enforced. See Verizon New Eng., Inc. v. Int'l Broth. of Elec. Workers, Local No. 2322, 651 F.3d 176, 188 (1st Cir. 2011) (noting that a court may only enter declaratory judgment in an actual controversy that is "ripe" for adjudication). The court finds that this case is ripe for adjudication. Although the City has yet to determine the exact method of enforcement and implementation, the questions before the court are purely legal and based entirely on the text of the ordinances. As such, actual implementation is unlikely to have any impact on the court's analysis.

absent plain expression of such intent, the purpose of the
statute cannot be achieved in the face of the local by-law."
Grace v. Town of Brookline, 379 Mass. 43, 54 (1979).
Neither situation is present in this case.

Plaintiffs argue, first, that both ordinances are
implicitly preempted by the state's comprehensive statutory
scheme regulating foreclosures, as set forth in Chapter 244
of the Massachusetts General Laws.  This statute, Plaintiffs
contend, demonstrates a legislative intent to exclusively
regulate the foreclosure process in the state.  However, the
state foreclosure statute contains no express language
forbidding municipalities from regulating mortgage
foreclosures, and it is well-established that the mere
existence of a state law on a certain subject matter does
not bar the enactment of local ordinances regarding that
same subject matter.  Bloom, 363 Mass. at 157.

The court must then determine whether the purpose of
the state statute would be frustrated by the enactment of
the two ordinances.  An examination of the ordinances
reveals no conflict, let alone a "sharp" one.  While the
state has established rules and regulations for

foreclosures, neither ordinance significantly alters the foreclosure process or the general relationship between mortgagee and mortgagor.

The Mediation Ordinance, for example, does not prohibit mortgagees from completing foreclosure proceedings as outlined by the state statute, but merely requires mortgagees to attempt mediation as a preliminary step. Plaintiffs suggested during the hearing on these motions that the Mediation Ordinance may extend the time line set forth for the foreclosure process by Chapter 244, but the ordinance specifically states that the mediation "shall in no way constitute an extension of the foreclosure process, nor an extension of the right to cure period." (Dkt. No. 4, Ex. 2, Mediation Ordinance, Chapter 7.60.070.)

Likewise, the Foreclosure Ordinance imposes relatively modest duties on mortgagees to maintain properties during foreclosure and does not alter the foreclosure process itself.  Plaintiffs suggest that, because the Foreclosure Ordinance imposes maintenance duties on mortgagees who are not in possession of the property, it somehow obliterates the distinction between foreclosure "by entry" and

foreclosure "by action" as established by state law.  Mass. Gen. Laws ch. 244, § 1.  However, the imposition of additional duties on a mortgagee has no effect on this distinction.  A mortgagee may comply with the duties imposed by the Foreclosure Ordinance while still choosing to foreclose either by entry or by action as prescribed by state law.

Plaintiffs next argue that the Foreclosure Ordinance is inconsistent with the state sanitary code, Mass. Gen. Laws ch. 111, and the Massachusetts Oil and Hazardous Material Release Prevention Act, Mass. Gen. Laws ch. 21E.  This inconsistency, according to Plaintiffs, stems from the ordinance's broad definition of "owner," which includes "a mortgagee of any such property who has initiated the foreclosure process," regardless of whether the mortgagee is in possession of the property.  (Dkt. No. 4, Ex. 1, Foreclosure Ordinance, Chapter 7.50.020(J).)  The regulations implementing the state sanitary code, on the other hand, only include "a mortgagee in possession of [the] property" in the definition of owner.  105 Mass. Code Regs. § 410.020.  Similarly, Chapter 21E does not include a

9

mortgagee not in possession of the property in its
definition of owner and specifically exempts secured lenders
from the definition if certain requirements are met.  Mass.
Gen. Laws ch. 21E, § 2.

Because of the different definitions of owner, the
Foreclosure Ordinance admittedly imposes maintenance duties
upon mortgagees not in possession of the property that are
not present under either the hazardous material statute or
the sanitary code.  However, the imposition of additional
duties by the ordinance does not create the degree of "sharp
conflict" -- or, indeed, any conflict -- between state and
local law that is required to justify invalidation of a
municipal ordinance.  Plaintiffs can simultaneously comply
with all of the requirements of the state laws and the
Foreclosure Ordinance without conflict.  If any conflict did
arise, the ordinance expressly states that an owner need not
comply with its requirements if that owner is "exempt from
such actions by Massachusetts General Laws . . . ." (Dkt.
No. 4, Ex. 1, Foreclosure Ordinance, Chapter 7.50.030.)[2]

_____

[2] Plaintiffs have provided the court with two copies of
the Foreclosure Ordinance -- one as an exhibit attached to
the Complaint (Dkt. No. 4, Ex. 1) and another as an exhibit
attached to their motion for judgment as a matter of law

In sum, the court finds that there is simply no
conflict between the two ordinances and any Massachusetts
state law that would support the conclusion that the
ordinances are preempted.

B. Contracts Clause.

Plaintiffs next argue that the Foreclosure Ordinance
violates the Contracts Clause of the U.S. Constitution.[3]
The Contracts Clause provides that "[n]o State shall . . .
pass any . . . Law impairing the Obligation of Contracts . .
. ." U.S. Const. art. I, § 10, cl. 1. The Clause, however,
"does not make unlawful every state law that conflicts with
any contract . . . ." Local Div. 589, Amalgamated Transit

_____

(Dkt. No. 19, Ex. 1). The first copy includes the language
allowing a state law exemption, while the second omits it.
The court will rely on the copy of the ordinance that is
attached to the Complaint, which includes the exemption
provision. However, even if the ordinance did not contain
this provision, the court would still find that it is not
inconsistent with state law for the reasons discussed in
this memorandum.

[3] While Plaintiffs state in their memorandum that both
ordinances violate the Contracts Clause, they limit the
substance of their argument to the Foreclosure Ordinance
only. The court will also limit its discussion to the
Foreclosure Ordinance. However, the court is convinced that
the Mediation Ordinance, which imposes similarly modest
requirements on Plaintiffs as the Foreclosure Ordinance and
has the same stated purpose, does not violate the Contracts
Clause for the same reasons as the Foreclosure Ordinance.

Union, AFL-CIO, CLC v. Massachusetts, 666 F.2d 618, 638 (1st Cir. 1981).  To determine whether a law violates the Contracts Clause, the court must first determine whether the law "operate[s] as a substantial impairment of a contractual relationship."  United Auto., Aerospace, Agric. Implement Workers of Am. Int'l Union v. Fortuno, 633 F.3d 37, 41 (1st Cir. 2011) (internal citation omitted).  If it does, the court must then determine whether the impairment is "reasonable and necessary to serve an important government purpose."  Id.

Turning to the first prong of the analysis, Plaintiffs argue that the ordinance presents a substantial impairment to Plaintiffs' existing contracts with mortgagors because it shifts to mortgagees the maintenance responsibilities that mortgagors assumed under the contracts.

When determining whether an impairment is substantial, the court must focus on the parties' reasonable expectations, including whether the parties were operating in a heavily regulated industry.  Alliance of Auto. Mfrs. v. Gwadosky, 430 F.3d 30, 42 (1st Cir. 2005).  The mortgage industry has historically been heavily regulated, and

12

Plaintiffs must have reasonably expected that some of the terms of their mortgages could be impaired by future changes in regulation.  Plaintiffs argue that they could not have expected that a municipality would issue such regulations, because the mortgage industry is typically regulated only by the federal and state governments.  However, that these regulations were issued by a municipality and not by the state does not change the fact that Plaintiffs should have reasonably expected the possibility of changes similar to those contained in the ordinances when entering into the mortgage contracts.

Additionally, the impairment at issue in this case is minor and does not affect any of the key aspects of Plaintiffs' contracts with mortgagors, such as the value of the property underlying the mortgage or Plaintiffs' ability to foreclose on the property.  While the Foreclosure Ordinance does impose additional financial burdens on Plaintiffs by forcing them to post a cash bond and take on new maintenance responsibilities, this burden does not rise to the level of a substantial impairment.

Even if the impairment were substantial, Plaintiffs'

13

Contracts Clause claim would still fail under the second prong of the analysis.  When determining whether a substantial impairment is "reasonable and necessary to serve an important government purpose," a court may consider whether the ordinance:

> (1) was an emergency measure; (2) was one to protect a basic societal interest, rather than particular individuals; (3) was tailored appropriately to its purpose; (4) imposed reasonable conditions; and (5) was limited to the duration of the emergency.

Fortuno, 633 F.3d at 41, 46.  For economic and social regulation, "courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure."  U.S. Trust Co. of N.Y. v. New Jersey, 431 U.S. 1, 22-23 (1977).

In this case, Defendant has made a sufficient showing that the Foreclosure Ordinance was necessary to protect a basic societal interest, was tailored appropriately to that purpose, and imposed reasonable conditions.

According to the ordinance's stated purpose,

> [u]nsecured and un-maintained vacant properties and foreclosing properties present a danger to the safety and welfare of public safety officers, the public, occupants, abutters and neighbors, and as such, constitute a public nuisance.  This section

14

is enacted to promote the health, safety and
welfare of the public, to protect and preserve the
quiet enjoyment of occupants, abutters and
neighborhoods, and to minimize hazards to public
safety personnel inspecting or entering such
properties.

(Dkt. No. 4, Ex. 1, Foreclosure Ordinance, Chapter

7.50.010.)  Protecting the health and safety of the

community has long been recognized as an important

governmental objective that falls squarely within the City's

police powers.[4]

The court is also convinced that the Foreclosure

Ordinance is reasonably tailored to meet this objective.  It

allocates the responsibilities for maintenance of properties

pending foreclosure, helps fund the City's efforts in the

foreclosure crisis through the cash bond requirement, and

increases the information in the City's regulatory database

to make enforcing mortgage regulations more efficient, all

while imposing relatively minor burdens on Plaintiffs that

---

[4] Defendant has included additional data on the
negative effects of foreclosures on public health and safety
in its memorandum in support of the motion to dismiss.
(Dkt. No. 23.)  In light of the fact that the motion is, in
part, a motion to dismiss, the court will not consider this
information.  However, even without the additional data, it
is abundantly clear that the ordinance serves an important
public interest.

do not affect Plaintiffs' ultimate right to foreclose.  In sum, the Foreclosure Ordinance falls far short of risking any violation of the Contracts Clause.

C. Unlawful Tax.

Next, Plaintiffs argue that the Foreclosure Ordinance's requirement of a cash bond constitutes an unlawful tax. Under Massachusetts law, a municipality does not have the power to collect taxes unless that power is expressly granted by the Legislature.  Silva v. City of Attleboro, 454 Mass. 165, 168 (2009).  The municipality may, however, collect regulatory fees.  To distinguish between taxes and fees, courts look to the characteristics of the charge:

> [Fees] are charged in exchange for a particular governmental service which benefits the party paying the fee in a manner "not shared by other members of society,". . . and the charges are collected not to raise revenues but to compensate the governmental entity providing the services for its expenses.[5]

Emerson College v. City of Boston, 391 Mass. 415, 424-25

---

[5] The original test for distinguishing fees from taxes included the requirement that fees be "paid by choice, in that the party paying the fee has the option of not utilizing the governmental service and thereby avoiding the charge . . . ."  Emerson College, 391 Mass. at 424. However, the Massachusetts Supreme Judicial Court later rejected the voluntariness factor as irrelevant in the regulatory fee context.  Silva, 454 Mass. at 172.

(1984).

Plaintiffs argue that, under this standard, the cash bond imposed by the Foreclosure Ordinance is an unlawful tax, because some portion of the bond is intended to be used for the City's general efforts to combat the foreclosure crisis.  (See Dkt. No. 4, Ex. 1, Foreclosure Ordinance, Chapter 7.50.030(A)(11) (explaining that a portion of the bond will be used to fund "an account for expenses incurred in inspecting, securing, and marking said building and other such buildings that are not in compliance with this Section" (emphasis added).)  Thus, Plaintiffs argue, the charge does not benefit the bond-payer in a manner not shared by other members of the community.

Plaintiffs' argument is unconvincing.  The Massachusetts Supreme Judicial Court has explained that "the particularized benefit provided in exchange for [regulatory fees] is the existence of the regulatory scheme whose costs the fee serves to defray." Silva, 454 Mass. at 170.  The City's retention of a portion of the bond under the Foreclosure Ordinance is directly tied to defraying its costs of regulating foreclosures in the City.  Consequently,

17

Plaintiffs do receive a particularized benefit from the cash bond in the form of a well-regulated industry.  Because the portion of the bond that the City retains is "'reasonably designed to compensate' the [City] for its anticipated regulation-related expenses," the charge constitutes a regulatory fee, not a tax.  <u>Id.</u> at 173 (internal citation omitted).

D. <u>Remaining Constitutional Claims</u>.

     Finally, Plaintiffs present a series of constitutional claims in the Complaint, including that (1) the ordinances impose arbitrary, unreasonable, vague or indefinite standards on Plaintiffs, (2) the ordinances result in an unconstitutional taking in violation of the Fifth Amendment, and (3) the ordinances violate procedural and substantive due process.  Plaintiffs have not made any arguments in support of these claims and the court will consider each only briefly.

     Turning to the first claim, Plaintiffs' counsel cursorily argued during the hearing that the Foreclosure Ordinance is unconstitutionally vague because it provides that owners who are "exempt from such actions by

Massachusetts General Laws" are not required to comply with
the ordinance.[6]  (Dkt. No. 4, Ex. 1, Foreclosure Ordinance,
Chapter 7.50.030.)  Any potential ambiguity created by this
provision does not rise to the level of a constitutional
violation, especially since Plaintiffs are operating in an
already heavily regulated industry that requires them to be
familiar with various local and state regulations regarding
housing, mortgages, and foreclosures.  See United States v.
Lachman, 387 F.3d 42, 56-57 (1st Cir. 2004) ("The mere fact
that a statute or regulation requires interpretation does
not render it unconstitutionally vague. . . . This is
particularly the case where, as here, the statute deals with
economic regulation and is addressed to sophisticated
businessmen and corporations which, because of the
complexity of the regulatory regime, necessarily consult
counsel in planning their activities . . . .").

Plaintiffs' Takings Clause claim is equally without
merit.  A statute constitutes a regulatory taking requiring

---

[6] Only one of the copies of the ordinance that
Plaintiffs provided to the court includes this exemption
provision.  (See Dkt. No. 4, Ex. 1; Dkt. No. 19, Ex. 1.)  If
the ordinance does not contain the provision, Plaintiffs'
vagueness challenge is completely without merit.

just compensation under the Fifth Amendment only if it deprives a plaintiff of "all economically beneficial or productive use" of his or her property.  <u>Lucas v. S.C. Coastal Council</u>, 505 U.S. 1003, 1015 (1992).  There is nothing in the pleadings to support such a claim.

Plaintiffs have also failed to plead any claim for a violation of due process.  An ordinance of the type at issue here violates substantive due process if it is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." <u>Village of Euclid, Ohio v. Amber Realty Co.</u>, 272 U.S. 365, 395 (1926).  The stated purpose of both ordinances is to protect public health and safety from the problems caused by the foreclosure crisis and, for the reasons discussed earlier in this memorandum, the court is convinced that they are reasonably tailored to that goal.

Consequently, the court will deny all of Plaintiffs' constitutional claims.

### IV. <u>CONCLUSION</u>

Widespread mortgage foreclosures undisputably are an issue of serious public concern to municipalities like

Springfield.   The modest effort made by the city to soften this crisis through the promulgation of the two ordinances violates no Constitutional provision or state statute.   For the foregoing reasons, Plaintiffs' Motion for Judgment as a Matter of Law (Dkt. No. 18) is hereby DENIED and Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Dkt. No. 20) is hereby ALLOWED.   The clerk may enter judgment for Defendant.   This case may now be closed.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge